Timothy Clark Dudley (13053)
1803 E Bosham Ln
Salt Lake City UT 84106
Tel (801) 661 8940
tcdudleyesq@gmail.com
*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MP-OTHA CORP., <br><br> Plaintiff, <br><br> vs. <br><br> AS AMERICAN AS DOUGHNUTS, INC. and, DOUGLAS E. BAGLEY, dba SPUDNUTS, ET AL <br><br> Defendants**.** | **ANSWER TO AMENDED COMPLAINT & AMENDED COUNTERCLAIMS** <br> **FED. R. CIV. P. 15(a)(1)(B)** <br><br> Case No 2:11 cv 00241 CW <br><br> Judge Waddoups |

Defendants, AS AMERICAN AS DOUGHNUTS, INC. and Douglas E. Bagley (collectively "Defendant"), through counsel, Timothy Clark Dudley, files their Answer to the Complaint of Plaintiff MP-OTHA ("Plaintiff").

### GENERAL DENIAL

Unless stated otherwise, Defendant denies all of Plaintiff's allegations in its Complaint. Paragraphs 1 through 41 correspond to the same paragraph-numbering in Plaintiff's Complaint.

### GENERAL DENIAL TO AMENDED COMPLAINT

Defendants As American and Mr. Bagley deny all new allegations (factual and legal) in Plaintiff's Amended Complaint against them in any connection with the most recently joined Defendants, including but not limited to paragraphs 19a through 19d.

### PARTIES

1. Lack information to admit or deny and thus deny the same. Deny that Plaintiff has standing to seek relief in any connection to the Supplier Agreement as it was not a party to it.

2. Lack information to admit or deny and thus deny the same.

3. Admit.

4. Admit.

5. Admit.

## JURISDICTION & VENUE

6. Admit.

7. Admit.

8. Admit.

9. Admit.

## GENERAL ALLEGATIONS

10. Deny.

11. Deny.

12. Deny.

13. Deny.

14. Lack information to admit or deny and thus deny the same.

15. Deny.

16. Deny.

17. Deny.

18. Deny.

19. Deny.

20. Deny.

21. Deny.

22. Deny.

## FIRST CLAIM FOR RELIEF

23. Defendant re-alleges and incorporates all above paragraphs here.

24. Deny.

25. Deny.

26. Deny.

27. Deny.

28. Deny.

29. Deny.

## SECOND CLAIM FOR RELIEF

30. Defendant re-alleges and incorporates all above paragraphs here.

31. Deny.

32. Deny.

33. Deny.

34. Deny.

35. Deny.

## THIRD CLAIM FOR RELIEF

36. Defendant re-alleges and incorporates all above paragraphs here.

37. Deny.

38. Deny.

39. Deny.

40. Deny.

41. Deny.

## DEFENSES

42. Defendant re-alleges and incorporates all above paragraphs here.

*First Defense*

43. Failure to state a claim for which relief may be granted.  Fed. R. Civ. P. 12(b)(6).

*Second Defense*

<u>Misrepresentation</u>

44. In his application to register a mark in or about April 2003, Grear alleged use of the mark SPUDNUTS.

45. But for use or a claim of use, Grear could not have obtained registered ownership of the mark SPUDNUTS.

46. On April 7, 2009 at 5:28 P.M. and on April 8, 2009 at 8:03 A.M., Grear admitted by electronic email to Mr. Bagley that he had never used the SPUDNUTS mark.

47. Grear has never owned or operated a retail bakery shop featuring doughnuts, pastry, and confectioneries in international class 35.

48. Grear has never had any bakers or employees working in retail bakery shops selling doughnuts, pastry, and confectioneries in international class 35.

49. Grear never acquired a business licenses to operate retail bakery shops selling doughnuts, pastry, and confectioneries in international class 35.

50. Grear never reported revenues on his or an entity's state and federal tax returns from sales of doughnuts, pastry, and confectioneries sold through retail bakery shops in international class 35.

51. In its application for registration of a mark in or about April 2003, Grear also alleged that no other person or entity had the right to use the SPUDNUTS mark in order to register the mark for himself.

52. At the time of Grear's application to register the mark, however, approximately thirty-seven retail bakery shops were operating under the SPUDNUTS mark, nine of which were original Spudnuts franchisees.

53. Thus, Plaintiff's alleged registered servicemark in SPUDNUTS is invalid.

*Third Defense*

54. Mr. Bagley and As American obtained common-law ownership of the marks "Spudnut Donuts" and "Spudnuts The Great Taste is Back" because they were the first ones to use them in, at least, the relevant geographic areas if not beyond.

*Fourth Defense*

<u>Knowledge</u>

55. Plaintiff, its own legal counsel, or both knew that neither Mr. Bagley nor As American possessed *federal registration* (as opposed to common-law ownership) of the marks "Spudnut Donuts" and "Spudnuts The Great Taste is Back."

56. Plaintiff, its own legal counsel, or both knew that Plaintiff possessed common-law, not federally registered, ownership of the marks.

57. Plaintiff's own legal counsel acknowledged As American's common-law ownership of the marks when he wrote by hand "TM" next to the marks in at least two different places on the contract itself.

58. The Supplier Agreement fails to claim that Mr. Bagley nor As American possessed *federal registration* (as opposed to common-law ownership) of the marks "Spudnut Donuts" and "Spudnuts The Great Taste is Back."

59. The Supplier Agreement contains a merger clause.

*Fifth Defense*

<u>Unreasonable Reliance</u>

60. Even if Plaintiff failed to possess actual or constructive knowledge that neither Mr. Bagley nor As American possessed *federal registration* of the marks "Spudnut Donuts" and "Spudnuts The Great Taste is Back," Plaintiff's reliance on the alleged representation would have been unreasonable.

61. Plaintiff was a sophisticated party to the Supplier Agreement.

62. The Supplier Agreement, and its negotiation, was an arm's-length transaction.

63. Plaintiff was represented by legal counsel concerning the Supplier Agreement and the marks.

64. Plaintiff's own legal counsel acknowledged As American's common-law ownership of the marks when he hand-wrote "TM" in at least two different places on the contract itself.

65. The Supplier Agreement contains a merger clause.

66. On the one hand, Plaintiff claims that the chief if not sole reason that it entered the agreement (titled "Supplier Agreement," not, for example, "Licensing Agreement) was to obtain rights to the marks.

67. On the other hand, Plaintiff claims that the rights were not even important enough for it or its legal counsel to verify ownership of the marks before executing the Supplier Agreement which could not have been easier and thus more reasonable to do.

68. Defendant is not an entity on which one such as Plaintiff or its counsel could reasonably rely as one's sole source, in a transaction such as this one, for the proprietary status of a mark.

*Seventh Defense*

69. The registration of the SPUDNUTS mark which Plaintiff allegedly purchased from Grear states on its face that it applies to retail bakery stores; it fails to establish application of the mark to goods or any other class.

70. The registration of the SPUDNUTS mark which Plaintiff allegedly purchased from Grear states on its face that it is a *service*mark, not for goods.

*Eighth Defense*

71. Defendant never claimed ownership rights (registered or common-law) of the SPUDNUTS mark, but claimed common-law ownership of marks that are different on their face--namely, "Spudnut Doughnuts" and "Spudnut Doughnuts The Great Taste is Back."

*Ninth Defense*

72. The mark SPUDNUTS or "Spudnut" is generic.

73. Thus, Plaintiff's alleged registered servicemark in SPUDNUTS is invalid.

*Tenth Defense*

74. The SPUDNUTS or "Spudnut" mark is descriptive.

75. Thus, Plaintiff's alleged registered servicemark in SPUDNUTS is invalid.

*Eleventh Defense*

76. The SPUDNUTS mark is used as a name by many entities (most if not all of which are retail bakery shops) based on rights independent of, and prior to, Grear's former and Plaintiff's current registered "Spudnuts" mark.

*Twelfth Defense*

77. Defendant, through the Supplier Agreement or otherwise, never represented that Plaintiff nor anyone else could use the marks for a retail bakery shop.

*Thirteenth Defense*

78. The recipe for the mix that Plaintiff contracted to acquire through Plaintiff was purchased directly from Spudnuts International, Inc.

*Fourteenth Defense*

79. One or more of Plaintiff's claims is barred by the Supplier Agreement's merger clause.

*Fifteenth Defense*

80. One or more of Plaintiff's claims is barred by the equitable doctrines of estoppel, laches, and waiver, respectively.

*Sixteenth Defense*

81. Plaintiff lacks standing to seek relief in any connection to the Supplier Agreement as it is not a party to it.

## **COUNTERCLAIMS**

*General Allegations*

82. Defendant is a supplier of a very specific potato-based doughnut mix to, *inter alia*, retailers.

83. Defendant acquired the recipe for this mix from Spudnuts International, Inc.

84. Spudnuts International, Inc. was the corporate entity that formed and evolved when the original "Spudnut," a potato-based doughnut, was created and introduced into commerce.

85. One of the retailers to whom Defendant supplies this specific mix is Red's Dogs & Donuts ("Red's") in Greeley, Colorado, owned by David Cohen ("Cohen").

86. Cohen specifically contracted Defendant to be Red's supplier in order to obtain this particular mix that had been acquired from Spudnuts International, Inc.

87. Hence, Red's might communicate the unique value of this mix to its customers by use of the general term "Spudnuts" in several media, but not in the name of its store.

88. On March 11, 2011, Plaintiff delivered a cease-and-desist letter, through counsel, on Cohen and Red's, which forbade use of the mark SPUDNUTS on Red's website (www.redsdogsanddonuts.com), menu, product names, t-shirts, logo, and elsewhere.

89. The letter asserted that, in order for Red's to use the term "Spudnuts" in any way, it must pay MP-Otha for licensing rights.

90. Plaintiff sent similar letters to Yo Yo Donuts and Daylight Donuts.

91. These customers of Defendant

92. Plaintiff sent similar communications to Facebook, where Defendant has a key marketing page, and to Be Locally, who provides Defendant with its website.

93. Bot the page and website were consequently shut down.

94. Plaintiff made similar communications to Lehi Roller Mills, Defendant's blender of its mix, which proceeded to refuse to make the mix under the name SPUDNUTS.

95. As the letter fails to reveal, the federally registered servicemark SPUDNUTS (No. 2,862,270) specifies its own scope.

96. It states that the registered servicemark is for retail bakery shops.

97. It does not say that the the registered servicemark applies to products, any other items, or other kinds of shops.

98. Thus, Plaintiff's assertion of this servicemark in this manner directly interferes with Defendant's business which depends especially if not solely on its costly acquisition of the original Spudnut recipe from Spudnuts International, Inc.

99. Moreover, Plaintiff's assertion of this servicemark in its cease-and-desist letter and in this suit presumes a certain scope of the alleged servicemark-rights.

100. Plaintiff asserts its servicemark-rights beyond the scope of its registered mark.

101. Defendant applied for registration of a SPUDNUTS mark, not for retail bakery shops, but for potato-flour mixes and doughnuts made therefrom in International Class 30 but the application was denied.

102. Defendant applied for the mark and did so in that particular class because of its long-established supplying of mixes for products substantially similar to if not the same as those marketed under Plaintiff's mark of SPUDNUTS.

*First Counterclaim*

**Intentional Interference with Economic Relations and Prospective Advantage**

103. Defendant re-alleges and incorporates all above paragraphs here.

104. Plaintiff intentionally interfered with Defendant's economic relation, Red's Dogs and Donuts, by delivering a cease-and-desist letter on it in order to divert to itself the gain that Defendant received by supplying Red's with doughnut mix specifically from Spudnuts International, Inc.

105. Thus, Plaintiff intentionally interfered with an improper purpose: in order to injure Defendant.

106. Thus, Plaintiff also intentionally interfered by an improper means: exceeding the legal scope of its alleged servicemark in SPUDNUTS.

107. Plaintiff knows that its alleged registered mark SPUDNUTS applies only to retail bakery shops.

108. Plaintiff knows that Defendant does not operate such a shop.

109. Plaintiff fails to allege that Defendant has licensed any mark, let alone its mark or similar marks, for the name of such a shop.

110. Nevertheless, Plaintiff intentionally interferes with Defendant's economic relations.

111. Also, Defendant is entitled to all damages that Plaintiff's interference has caused, including any profits that it has received from Defendant by such interference, in amounts to be shown at trial.

112. Plaintiff claims to have acquired the ownership rights in SPUDNUTS from Roger Grear in late December 2010.

113. Grear has admitted never having used the mark in commerce let alone in retail bakery shops.

114. Grear admitted never advertising under the mark.

115. Grear admitted never having sales under the mark.

<u>Second Counterclaim</u>

**Breach of Contract**

116. Defendant re-alleges and incorporates all above paragraphs here.

117. If Plaintiff is somehow found to be a party to the Supplier Agreement, then it is in breach of it.

118. Plaintiff has purchased, produced, and sold doughnuts or doughnut mix other than ones from Defendant contrary to the Supplier Agreement, and continues to do so.

119. Also, Plaintiff has done so beyond the exclusive 100-mile radius that Defendant granted Plaintiff contrary to the Supplier Agreement, and continues to do so.

120. Defendant is entitled to all damages that Plaintiff's breaches have caused, including any profits that it has received by such breaches, in amounts to be shown at trial.

121. Under the Supplier Agreement, Plaintiff is obligated to compensate Defendant for costs and attorney fees.

122. Under the Supplier Agreement, Plaintiff is also obligated to pay interest at ten-percent (10%) annum.

<u>Third Counterclaim</u>

**Invalid Assignment**

123. Defendant re-alleges and incorporates here all allegations above.

124. The mark SPUDNUTS, ownership of which Plaintiff claims to have had assigned to it, was not used in commerce let alone for retail bakery shops before the alleged assignment.

125. Thus, no goodwill existed in the mark prior to the alleged assignment.

126. Thus, no goodwill was transfered in the assignment; only the mark was assigned.

127. Therefore, the assignment was a naked invalid transfer of the mark under 15 U.S.C. 1060 and the doctrine of assignment-in-gross.

128. Defendant is entitled to any damages that this invalid assignment have caused.

129. This Court should declare the transfer invalid and thus Plaintiff as not owning the mark or holding its federal registration.

**<u>RESERVATION OF RIGHTS</u>**

130. Defendant reserves the right to add defenses and claims as discovery might warrant.

**<u>DEMAND FOR JURY TRIAL</u>**

131. Defendant demands a trial by jury concerning all issues triable by a jury in this action.

THEREFORE, Defendant denies that Plaintiff is entitled to any relief.  Defendant respectfully requests that this Court enter judgment:

a. Dismissing the Complaint with prejudice in Defendant's favor;

b. Awarding Defendant its attorney fees for this litigation;

c. Awarding Defendant its costs for this litigation;

d. Awarding Defendant damages on the above Counterclaims to be shown at trial;

e. Awarding Defendant such further relief as this Court might deem just and proper; and,

f. Recognizing and declaring the invalid transfer of the mark SPUDNUTS from Grear to Plaintiff because of the naked transfer in violation of the doctrine of assignment of gross.

Respectfully Submitted 23 MAY 2011

/s/ Timothy Clark Dudley
_____
Timothy Clark Dudley, Esq
1803 Bosham Lane
SLC UT 84106
Tele 801 661 8940
tcdudleyesq@gmail.com